UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
BORIS A. KRIVONOS,

                          Plaintiff,                          **<u>MEMORANDUM AND ORDER</u>**

          -against-
                                                              11-CV-2729 (SLT) (LB)

U.S. DEPARTMENT OF JUSTICE; EXECUTIVE
OFFICE FOR IMMIGRATION REVIEW, BOARD
OF IMMIGRATION APPEALS; OFFICE OF THE
GENERAL COUNSEL; JENNIFER J. BARNES,
BAR COUNSEL; U.S. DEPARTMENT OF
HOMELAND SECURITY,

                          Defendants.
------------------------------------------------------------------x
**TOWNES, United States District Judge:**

  Plaintiff Boris A. Krivonos, an attorney, brings this action on his own behalf, seeking,

*inter alia*, an order (1) declaring that decisions of the Board of Immigration Appeals ("BIA")

which expelled him from practice before the BIA, the Immigration Courts and the U.S.

Department of Homeland Security ("DHS") and denied him reinstatement were arbitrary and

capricious, (2) directing that he be reinstated to practice before these entities, and (3) awarding

him compensatory damages. Defendants now move to dismiss this action, arguing this Court

lacks subject-matter jurisdiction and that Plaintiff has not established "irreparable harm." For

the reasons set forth below, Defendants' motion to dismiss is denied without prejudice to

requesting permission, at the close of discovery, to move for summary judgment pursuant to 5

U.S.C. §701(a)(2) and with respect to Plaintiff's compensatory damages claims.

***BACKGROUND***

  Except as otherwise indicated, the following facts are drawn from Plaintiff's complaint

and the exhibits thereto and are assumed to be true for purposes of this motion. Plaintiff, a 1996

graduate of Hofstra University School of Law, is a solo practitioner in Forest Hill, Queens

(Complaint at ¶¶4, 11). He has worked in this capacity since 1997, the year he was admitted to

the New York State bar and to practice before the United States District Courts for the Southern and Eastern Districts of New York (*id*. at ¶¶12-13).

In August 2001, Plaintiff was arrested and charged with, *inter alia*, conspiring to obtain immigrant visas through fraudulent means (*id*. at Ex. 1).  According to a felony information filed by the government, the "visa fraud conspiracy" involved a scheme to increase Plaintiff's clients' odds of obtaining a "green card" by filing more than one Diversity Immigrant Visa Lottery ("DVL") entry per applicant, in violation of DVL program requirements that only one entry be submitted for each applicant (*id*. at Ex. 2).  On April 5, 2002, Plaintiff waived indictment and pled guilty to conspiracy to defraud the United States in violation of 18 U.S.C. §371 (*id*., at ¶22).  On September 20, 2002, Plaintiff was sentenced to three years' probation, including four months of home confinement (*id*. at ¶23, Ex. 3).

In mid-November 2002, the General Counsel's Office of the Department of Justice's Executive Office for Immigration Review (the "EOIR"), represented by Bar Counsel Jennifer J. Barnes, filed a Notice of Intent to Discipline (the "Notice"), recommending that Plaintiff be expelled from practice before the EOIR in light of his conviction (*id*. at ¶25, Ex. 5).  Although the Notice advised Plaintiff that he was required to file a written answer within thirty days (*id*. at Ex. 5 at ¶8), Plaintiff never did so (*id*. at ¶26).[1]  Accordingly, on January 30, 2003, the BIA, citing to regulations requiring that the recommendations set forth in the Notice be adopted in the absence of an answer, expelled Plaintiff from practice before the BIA, the Immigration Courts and the INS (*id*. at Ex. 6).

---

[1]On January 9, 2003, the U.S. Immigration and Naturalization Service (the "INS") moved to join the EOIR's action and filed a "Motion for Reciprocal Discipline," requesting that any disciplinary measures which restricted Plaintiff's ability to practice before the BIA or the Immigration Courts also apply to Plaintiff's authority to practice before the INS (*id*. at Ex. 5).

The Grievance Committee for the Second and Eleventh Judicial Districts (the "Grievance Committee") also sought to discipline Plaintiff in light of his conviction. In a decision and order dated March 6, 2003, the Appellate Division of the Supreme Court of the State of New York, Second Department, suspended Plaintiff from the practice of law pursuant to N.Y. Judiciary Law §90(4)(f) and authorized the Grievance Committee to commence disciplinary proceedings against Plaintiff (*id*. at ¶28, Ex. 7). In that same decision and order, the Appellate Division appointed a Special Referee to hear and determine the Grievance Committee's petition (*id*. at Ex. 7, p. 2).

The United States District Court for the Southern District of New York (the "Southern District") obtained a copy of the Appellate Division's March 6, 2003, decision and order. On April 4, 2003, Judge Rakoff – then the Chairman of the Southern District's Committee on Grievances – issued an order directing Plaintiff to show cause by April 25, 2003, why he should not be suspended from practice before the Southern District "contemporaneously with the State's discipline" (*id*. at Ex. 8). Judge Rakoff's order stated that unless Plaintiff filed a timely response to the order to show cause, he would be "suspended effective April 28, 2003 . . . until such time as he [was] reinstated to the practice of law in the State of New York" (*id*.).[2]

There is nothing in the complaint to suggest that Plaintiff, who interpreted Judge Rakoff's order as having "suspended Plaintiff from the practice of law until such time as he [was] reinstated in the State of New York" (*id*. at ¶29), ever responded to the Southern District's order to show cause. However, Plaintiff actively participated in the State court proceedings. According to Plaintiff, he appeared before the Special Referee on May 22, 2003, and admitted

---

[2]Although Plaintiff alleges that he is also admitted to practice before the United States District Court for the Eastern District of New York (Complaint at ¶12), the complaint makes no allegations regarding disciplinary proceedings in this district.

his conviction (*id*. at ¶30).  According to the Special Referee, Plaintiff also expressed "deep remorse for his terrible mistake," testifying that he only had a few years of experience, was practicing alone, and did not know that his actions were illegal (*id*. at Ex. 9, p. 4).  In addition, Plaintiff provided two letters and four live witness, all attesting to Plaintiff's good character (*id*. at 3-4).

On August 6, 2003, the Special Referee issued his report, finding that the Grievance Committee had sustained its burden of proving that Plaintiff was guilty of professional misconduct by virtue of his conviction (*id*. at 5), but also noting that Plaintiff's repentance appeared "sincere and remorseful" (*id*. at 4).  Thereafter, the Grievance Committee moved to confirm the Special Referee's report, but requested only that the Appellate Division "impose such discipline . . . as the court deem[ed] just and proper" (*id*. at Ex. 10, p. 2).  Plaintiff joined in the Grievance Committee's motion, and asked the Appellate Division to "consider the mitigating factors when imposing discipline" (*id*.).

Crediting Plaintiff's claims that he was motivated solely by compassion for his clients and did not profit from his misconduct, the Appellate Division suspended Plaintiff from the practice of law for one year beginning on February 13, 2004 (*id*.).  The Appellate Division's opinion and order dated January 12, 2004, expressly provided that Plaintiff could apply for reinstatement as early as August 13, 2004, and listed the proof that Plaintiff would have to include with his application for reinstatement (*id*.).

It is unclear when Plaintiff first moved for reinstatement to the State bar.  However, according to a decision and order issued by the Appellate Division on April 18, 2006, Plaintiff's first motion was dismissed with leave to renew upon submission of the proof set forth in the Appellate Division's January 12, 2004, opinion and order (*id*. at Ex. 11).  Plaintiff's second

motion, which included the required paperwork, was referred to the Committee on Character and Fitness (the "Character Committee") for a report on Plaintiff's fitness to be an attorney (*id*.).

On June 12, 2006, the Character Committee held a hearing on Plaintiff's application (*id*. at ¶33). Thereafter, the Character Committee issued a report recommending Plaintiff's reinstatement (*id*.). In a decision and order dated September 18, 2006, the Appellate Division adopted that recommendation and reinstated Plaintiff to the State bar (*id*., Ex. 12). Plaintiff then applied for reinstatement to the Southern District bar, and was restored to the roll of attorneys authorized to practice in that district on September 29, 2006 (*id*. at Ex. 13).

***Plaintiff's Petitions for Reinstatement to the Immigration Bar***

In October 2006, Plaintiff filed a Petition for Reinstatement with the BIA (*id*. at Ex. 26). In that petition, Plaintiff admitted that in 1999 and 2000 he had filed "multiple entries in the Diversity Visa Lottery for clients pursuing green cards" (*id*. at 1). Plaintiff stated that he "filed 10 entries for each client, instead of just [one]," and "charged each client 50 dollars" for doing so (*id*.), but expressed "deep remorse" for his actions (*id*. at 3). Plaintiff also noted that he had been reinstated to practice in the State of New York and the Southern District, had earned 24 hours of Continuing Legal Education credits from the New York State Bar Association in both 2004 and 2005, and had passed the Multistate Professional Responsibility Examination in March 2005 (*id*. at 2-3).

The EOIR's Office of General Counsel (the "OGC") opposed Plaintiff's petition. In a submission filed by defendant Jennifer J. Barnes on November 7, 2006, the OGC conceded that Plaintiff, having been reinstated to the New York bar, appeared to meet the definition of an

attorney as set forth in 8 C.F.R. §1001.1 (*id*. at Ex. 28, ¶5).[3]  However, the OGC noted that,

under the applicable regulations, Plaintiff also had "the burden of demonstrating by clear,

unequivocal and convincing evidence that he . . . possesses the moral and professional

qualifications required to appear before the [BIA] and the Immigration Courts or [the DHS], and

that his . . . reinstatement will not be detrimental to the administration of justice" (*id*. at ¶4,

quoting 8 C.F.R. §1003.107(b)(1)).[4]  The OGC argued that Plaintiff had not met this burden,

stating:

> Respondent was convicted of a felony count of immigration-
> related fraud, in that he improperly filed multiple entries in the
> Diversity Visa Lottery program for clients pursuing green cards.
> He admits that he filed 10 entries for each client, when each client
> was only entitled to one entry.  Although Respondent has
> expressed remorse for his crime, a crime of this nature cannot be
> overlooked.  Immigration-related fraud strikes at the heart of this
> country's immigration laws and undermines the integrity of the
> entire system.  Respondent attempted to illegally obtain an
> advantage for his own clients, a course of action which
> simultaneously resulted in decreasing the chances for other aliens
> to obtain benefits through the DVL who truly qualified for the
> program (*id*. at ¶5).

In a submission dated November 9, 2006, the DHS also opposed Plaintiff's petition, stating that

it concurred with OGC's argument that Plaintiff had not met his burden under 8 C.F.R.

§1003.107(b)(1) (Complaint at Ex. 29).

---

[3] 8 C.F.R. §1001.1(f) defines the term "attorney" to mean "any person who is eligible to practice law in and is a member in good standing of the bar of the highest court of any State, possession, territory, or Commonwealth of the United States, or of the District of Columbia, and is not under any order suspending, enjoining, restraining, disbarring, or otherwise restricting him in the practice of law."

[4] The DHS, which was formally created by the passage of the Homeland Security Act in November 2002, integrated all or part of 22 different Federal departments and agencies, including the INS.

On December 5, 2006, the BIA denied Plaintiff's petition. The BIA held that Plaintiff met "the regulatory definition of attorney" because he had been reinstated to the practice of law in the State of New York and in the Southern District (*id*. at Ex. 20). However, the BIA concurred with the OGC's view that "immigration-related fraud strikes at the heart of the country's immigration laws and undermines the integrity of the entire system," and held that, in light of Plaintiff's crime, "he should not be reinstated at this time" (*id*.).

The BIA, acting *sua sponte*, subsequently decided to amend and publish its decision (Complaint at ¶78, Ex. 21). The amendments were not substantive but were characterized by the BIA as "editorial changes consistent with [the BIA's] disposition of the case as a precedent" (*id*. at Ex. 21, p. 292, n.1). The decision was subsequently published at 24 I&N Dec. 292 (BIA 2004) and online.

On January 15, 2009, Plaintiff filed a second motion for reinstatement (*id*. at Ex. 30). In his two-page submission, which contained 16 unnumbered sentences, Plaintiff repeated many of the same facts set forth in his October 2006 motion, including the fact that he had been reinstated to the New York bar and to the roll of attorneys eligible to practice in the Southern District. However, Plaintiff also provided an update regarding his accomplishments and activities. He noted, *inter alia*, that he had completed additional Continuing Legal Education courses and remained in good standing with the New York bar; had obtained a Certificate of Relief from Disabilities from New York authorities; had been reinstated as a notary public; and had become a licensed real estate broker. The motion concluded by stating that Plaintiff continued to "feel deep remorse" for his wrongdoing, and by requesting that he be reinstated to the immigration bar (*id*.).

The OGC responded to Plaintiff's second motion for reinstatement in much the same way that it had responded to his first motion. The OGC, again represented by defendant Barnes, opposed Plaintiff's application on the ground that he had not met the "burden of demonstrating by clear, unequivocal and convincing evidence that he . . . possesses the moral and professional qualifications required to appear before the [BIA] and the Immigration Courts or the [DHS] . . . (*id*. at Ex. 31, ¶7 (quoting 8 C.F.R. §1003.107(b)(1))). The OGC also repeated the allegation that Plaintiff had been convicted of immigration-related fraud, again noting that Plaintiff had admitted filing "10 entries for each client, when each client was only entitled to one entry" (*id*. at ¶8).

However, the OGC's response to the second motion differed from its response to the first motion in two respects. First, the OGC noted that Plaintiff had failed to file an answer to the OGC's Notice of Intent to Discipline and had, thereby, failed to contest his expulsion (*id*.). Second, the OGC reminded the BIA that expulsion is "presumptively permanent" and "the most serious form of discipline which is reserved for the most egregious types of misconduct" (*id*.). The OGC concluded, "an expelled attorney has a very high burden to meet in order to demonstrate that he . . . should be reinstated at all" (*id*.).

In a two-page decision dated March 6, 2009, the BIA again concurred with the OGC. After recounting the circumstances that led to Plaintiff's expulsion and describing his prior motion, the BIA concluded that Plaintiff had "again fail[ed] to show that it would be appropriate for him to be reinstated" to the immigration bar (*id*. at Ex. 22, p.2). Citing to 8 C.F.R. §1003.101(a)(1), the BIA agreed with the OGC that expulsion was "presumptively permanent," and that Plaintiff had not met his burden under 8 C.F.R. §1003.107 of "showing that

reinstatement is appropriate at this time, given his serious crime, involving conspiracy to defraud the government" (*id.*).

On April 3, 2009, Plaintiff sought review of the BIA's order in the United States Court of Appeals for the Second Circuit (*id.* at ¶115, Ex. 40). In a decision dated October 7, 2009, the Second Circuit denied Plaintiff's petition for review, noting that it lacked jurisdiction because Plaintiff was not challenging a final order of removal (*see id.* at Ex. 40, p.4 (citing 8 U.S.C. §1252(a) and *Kanacevic v. INS*, 448 F.3d 129, 134 (2d Cir. 2006))). However, the Second Circuit dismissed the petition "without prejudice to the filing of an action for review of the [BIA's] order denying . . . reinstatement under the Administrative Procedure Act in the appropriate district court" (*id*. at 4-5). The Second Circuit expressed no view regarding the district court's jurisdiction to entertain such an action or the merits of the case, stating that such questions were "best addressed in the first instance by the district court" (*id*).

### *The Instant Action*

On June 7, 2011 – 20 months after the Second Circuit dismissed his petition and more than 27 months after the BIA denied his second motion for reinstatement – Plaintiff commenced this action against the United States Department of Justice, the EOIR, the BIA, the OGC, the DHS and Jennifer J. Barnes – the lawyer who represented the OGC in all of the proceedings before the BIA relating to Plaintiff. Although portions of Plaintiff's complaint are unclear, it clearly requests (1) a declaratory judgment, (2) an order compelling his reinstatement and publication of said order, and (3) compensatory damages in the amount of $24.7 million.

First, the complaint requests an order declaring "Defendants' actions and orders, published and unpublished, refusing to reinstate Plaintiff to practice before the BIA, Immigration Courts and DHS, to be arbitrary, capricious, and/or an abuse of discretion within the meaning of

5 U.S.C. §706(2)(A)" (Complaint at 28). Although this language does not specify particular "actions or orders" and appears to encompass all of the defendants named in this action, a section of the complaint entitled "Defendants' Actions" suggests that Plaintiff is referring to the BIA's January 30, 2003, decision to expel Plaintiff from the practice of immigration law and the BIA's subsequent decisions denying Plaintiff's petitions for reinstatement (*id.* at ¶¶36-37). That same section of the complaint alleges, *inter alia*, that these decisions involve "licensing" and constitute "agency action," an "adjudication," an "order," and a "sanction," as those terms are defined in 5 U.S.C. §551 (*id.* at ¶¶38-39), and that Plaintiff, who suffered a "legal wrong" as a result of "each of Defendants' agency actions," is entitled to judicial review under 5 U.S.C. §702 (*id.* at ¶41). The complaint further alleges that "[e]ach instance of Defendants' agency action is 'final' within the meaning of 5 U.S.C. §705" and that Plaintiff is "authorized by 5 U.S.C. §703 to seek declaratory relief" because there is no "special statutory review proceeding available" (*id.* at ¶¶42-43). In addition, the complaint alleges that "[e]ach of Defendants' decisions concerning Plaintiff amounted to a denial of 'relief' within the meaning of 5 U.S.C. §§551(11)(A) and 701(b)(2)" (*id.* at ¶40). However, the complaint does not specifically allege a failure to act on the part of any of the defendants.

Second, the complaint requests an order (1) directing the "Defendants to reinstate Plaintiff to the practice of immigration law before the BIA, the Immigration Courts and the DHS," and (2) directing "Defendants to publish online and in print the decision that Plaintiff be reinstated" (*id.* at 28). The complaint does not specifically request an injunction, but contains a section entitled "Defendants' Irreparable Damage to Plaintiff" (*id.* at 23-26). This section details the monetary impact which publication of the BIA's September 26, 2007, decision had on Plaintiff's law practice, noting that his revenues declined from at least $228,000 in 2001 to a

"current annual level of $34,000" (*id*. at ¶¶102, 108). This section also alleges that Plaintiff's

law practice has "no chance of recovery," asserting that "[t]his fact is proved by [his] enormous

and futile efforts at advertising," which "failed to bring about any increase in business" (*id*. at

¶106).

Neither this section nor any other part of the complaint alleges that Plaintiff's losses are

incalculable. To the contrary, the complaint seeks an order directing "Defendants to pay

Plaintiff $2,470,000 in compensatory damages" (*id*. at 28), which allegedly represents

"Plaintiff's aggregate loss of income between September 2007 and February 2023" – the year

Plaintiff will reach the "retirement age of 67" (*id*. at ¶108).[5] However, the complaint does not

articulate a legal basis for recovering money damages from Defendants, all of whom are federal

departments, units thereof, or federal employees.

***Defendants' Motion to Dismiss***

Defendants – all of whom are represented by a Senior Litigation Counsel in the Office of

Immigration Litigation of the U.S. Department of Justice's Civil Division – now move to dismiss

this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants' motion, which consists of a Notice of Motion and a seven-page memorandum of

law ("Defendants' Memo"), contains two numbered points. In the first, Defendants, citing to

*Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), and to 5 U.S.C. §706(1),

argue that this Court "lacks subject matter jurisdiction over [Plaintiff's] challenge to the

agency's decision to deny his reinstatement request because the Administrative Procedure Act

('APA') does not permit judicial review of non-ministerial actions or actions that Congress has

---

[5]The complaint also alleges that Plaintiff has lost Social Security benefits as a result of his diminished income, but implies that Plaintiff is not pursuing a claim for loss of Social Security income (*id*.).

delegated to the agency" (Defendants' Memo at 4).  Defendants acknowledge that Plaintiff is seeking a judgment declaring Defendants' actions to be "arbitrary, capricious, and/or an abuse of discretion within the meaning of 5. U.S.C. §706(2)(A)," yet argue that "[b]ecause the agency's decision was discretionary and non-ministerial, 5 U.S.C. §§701(a), 706(1) does not apply" (Defendants' Memo at 5).

In their second point, Defendants contend that they have not caused Plaintiff to suffer "irreparable harm" (*id.* at 6).  This point contains the germ of two separate arguments.  First, Defendants argue that Plaintiff's efforts to blame them for his loss in income "lack a basis in the facts" (*id.*).  Defendants note that Plaintiff is still free to engage in the practice of law in courts other than the BIA and Immigration Courts, and that "nothing prevents him from building and establishing his practice and returning his income to its prior level" (*id.*).  Second, quoting *Guitard v. United States Sec'y of Navy*, 967 F.2d 737 (2d Cir. 1992), Defendants argue that a loss of income stemming from damage to reputation and difficulty finding employment is insufficient to establish irreparable harm (*id.*).

Defendants' Memo also contains several footnotes, two of which suggest additional arguments.  First, citing to 5 U.S.C. §701(a)(2) and *Heckler v. Chaney*, 470 U.S. 821, 830 (1985), Defendants assert – without further analysis – that "Congress's failure to provide guidance to the agency provides a further ground for finding that the APA does not afford this Court jurisdiction" (Complaint at 5, n.2).  Second, Defendants argue that the APA does not waive sovereign immunity with respect to lawsuits seeking monetary relief and that the complaint asserts no other jurisdictional basis for Plaintiff's claim for compensatory damages (*id.* at 5, n.3).

In his Affidavit/Affirmation in Opposition to Defendants' Motion to Dismiss, which incorporates a memorandum of law ("Plaintiff's Response"), Plaintiff spends more time addressing the issues raised in footnotes than the issues raised in the points themselves. To be sure, Plaintiff mentions that he is seeking review "under the 'abuse of discretion' standard of §706(2)(A)," rather than seeking to compel agency action under 5 U.S.C. §706(1) (Plaintiff's Response at 4). However, Plaintiff devotes considerably more effort to rebutting Defendants' §701(a)(2) argument, citing to provisions of 8 C.F.R. §1003.107(b) for the proposition that "Defendants' statute offers judicially manageable standards for judging how and when Defendants should exercise their discretion in reinstating an attorney to the practice of immigration law" (Plaintiff's Response at 4).

Similarly, Plaintiff devotes only a few sentences to Defendants' "irreparable harm" arguments. Plaintiff's Response states:

> In their Motion, Defendants refer to cases, which have no bearing on the instant case, as they discuss "irreparable harm" in the context of a preliminary injunction. Plaintiff does not seek a preliminary injunction. Plaintiff seeks compensatory damages . . . . (Plaintiff's Response at 4 (internal citation omitted)).

Plaintiff's Response also articulates a theory for recovering compensatory damages which was not mentioned in Plaintiff's complaint. First, Plaintiff cites to the Federal Tort Claims Act, 28 U.S.C. §1346(b) (the "FTCA"), noting that this statute provides jurisdiction in the federal courts and waives the sovereign immunity of the United States for "claims against the United States, for money damages . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred" (Plaintiff's

Response at 4). Then Plaintiff asserts that he has a cause of action against the United States for

defamation, alleging that certain portions of the BIA's September 26, 2007, decision were false

(*id*.).

In their Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss ("Defendants'

Reply"), Defendants principally address Plaintiff's arguments relating to the FTCA. Defendants

first assert that Plaintiff has not exhausted his administrative remedies, and that his failure to do

so bars any action under the FTCA (Defendants' Reply at 2) (citing *Robinson v. Overseas*

*Military Sales Corp*., 21 F.3d 502, 510 (2d Cir. 1994))). Second, Defendants argue that the

FTCA does not apply to claims arising out of libel, slander, or misrepresentation (*id*.) (citing 28

U.S.C. §2680(h))). Defendants' Reply does not address any of Plaintiff's other arguments, other

than to reference arguments set forth in Defendants' Memo and to cite *Norton* for the proposition

that the Court "lacks subject matter jurisdiction over the complaint because the decision was a

non-ministerial agency action over a matter delegated to the agency's discretion" (*id*.).[6]

### DISCUSSION

#### Standard of Review

In considering a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil

Procedure, a court must accept all factual allegations in the complaint as true, and draw all

reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-

---

[6]In a letter dated January 23, 2012, Plaintiff sought permission to file a sur-reply, asserting that Defendants' Reply "contains some material misrepresentation [*sic*] of Plaintiff's position" (Letter to Hon. Sandra L. Townes from Boris A. Krivonos, dated Jan. 23, 2012). By order dated January 24, 2012, this Court denied Plaintiff's request without prejudice to filing an application specifically identifying the material misrepresentations or other grounds for seeking a sur-reply. To date, Plaintiff has not filed such an application.

56 (2007). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 570. If a party does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id*.

Because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint," *see Cortec Indus., Inc. v. Sum Holding L.P*, 949 F.2d 42, 47 (2d Cir. 1991) (internal citations omitted), materials outside the four corners of the complaint are "generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03-CV-6233 (JBW), 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004). However, a court can consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc*., 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holdings L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).

Typically, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, Plaintiff, who consistently refers to himself as "Plaintiff Pro Se," is an experienced attorney, licensed to practice in the State of New York and eligible to practice before the Southern District. Complaint at ¶12. Accordingly, Plaintiff's submissions will be held to the higher standard that applies to submissions drafted by lawyers. *See Gray v. City of New York*, 10-CV-3039 (SLT)(CLP), 2012

WL 947802, at *10 (E.D.N.Y. Mar. 20, 2012); *see also Moore v. City of New York*, No. 08-CV-2449 (RRM)(LB), 2011 WL 795103, at *1 (E.D.N.Y. Feb. 28, 2011) (even a disbarred attorney's submissions are not entitled to the degree of liberality given to non-attorney *pro se* plaintiffs).

***The Administrative Procedure Act***

Although Plaintiff's complaint does not expressly mention the Administrative Procedure Act or "APA," the pleading is rife with citations to that statute. The complaint specifically alleges that Plaintiff suffered a "legal wrong" as a result of "agency actions" and "is entitled to judicial review . . . pursuant to 5 U.S.C. §702." Complaint at ¶41. Section 702, which is part of the APA, authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." As used in this statute, the term "agency action" is defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §551(13).

Plaintiff's complaint further alleges that Defendants' decisions concerning Plaintiff constitute, *inter alia*, "agency action," an "order," and a "sanction," and involve "licensing" within the meaning of various provisions of 5 U.S.C. §551. Complaint at ¶¶38-39. As used in 5 U.S.C. §702, the terms "rule," "order," "license," "sanction," and "relief" describe "circumscribed, discrete categories" of agency action, *Norton*, 542 U.S. at 62, each of which is specifically defined in 5 U.S.C. §551. For example, "'order' means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C. §551(6). The term "license" is defined to include "the whole or a part of an agency permit, certificate, approval, registration,

16

charter, membership, statutory exemption or other form of permission." 5 U.S.C. §551(8).[7] The

term "sanction" is defined to include "the whole or a part of an agency . . . revocation . . . or

suspension of a license." 5 U.S.C. §551(10)(F).

In contrast, the terms "equivalent or denial thereof" and "failure to act" – which also

appear in the definition of "agency action" – are not defined in the APA. However, in *Norton*,

*supra*, the Supreme Court provided some guidance regarding the meaning of these terms. The

Supreme Court stated that an "'equivalent . . . thereof' must also be discrete (or it would not be

equivalent), and a 'denial thereof' must be the denial of a discrete listed action (and perhaps

denial of a discrete equivalent)." *Norton*, 542 U.S. at 62 (parentheses in original). The Supreme

Court also expressed the view that the term "failure to act" is "properly understood as a failure to

take an *agency action* – that is, a failure to take one of the agency actions (including their

equivalents) earlier defined in §551(13)." *Id*.

In defining these terms, the *Norton* Court specifically noted that a "failure to act" is not

the same as a "denial." The Supreme Court explained that a "denial" is "the agency's act of

saying no to a request," while a "failure to act" is "simply the omission of an action without

formally rejecting a request – for example, the failure to promulgate a rule or take some decision

by a statutory deadline." *Id*. at 63. The Supreme Court also noted that "[t]he APA provides

relief for a failure to act in §706(1)," which authorizes a reviewing court to "compel agency

action unlawfully withheld or unreasonably delayed." *Id*. at 62 (quoting 5 U.S.C. §706(1)).

_____

[7]The term "licensing" is separately defined to include an "agency process respecting the
grant, renewal, denial, revocation, suspension, annulment, withdrawal, limitation, amendment,
modification, or conditioning of a license." 5 U.S.C. §551(9).

In *Norton*, all of the claims at issue involved assertions that an agency, the Bureau of Land Management, had failed to take action that it was required to take. *Id*. at 61. Accordingly, *Norton* addressed the scope of review permissible under §706(1). The Norton Court emphasized that "the only agency action that can be compelled under the APA is action legally *required*." *Id*. at 63 (emphasis in original). After noting that §706(1) was in the nature of mandamus, and that "[t]he mandamus remedy was normally limited to enforcement of a specific, unequivocal command, . . . the ordering of a precise, definite act . . . about which [an official] had no discretion whatever," *id*. (internal quotations and citations omitted; brackets in original), the *Norton* Court concluded:

> As described in the Attorney General's Manual on the APA, a document whose reasoning we have often found persuasive, . . . §706(1) empowers a court only to compel an agency "to perform a ministerial or non-discretionary act," or "to take action upon a matter, without directing *how* it shall act." Attorney General's Manual on the Administrative Procedure Act 108 (1947) (emphasis added). See also L. Jaffe, Judicial Control of Administrative Action 372 (1965); K. Davis, Administrative Law § 257, p. 925 (1951). Thus, a claim under §706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*.

*Norton*, 542 U.S. at 63-64 (internal citations omitted; emphasis in original).

### Defendants' First Point

The first point raised in Defendant's Memo relies largely, if not exclusively, on the above-quoted portion of the *Norton* opinion. Defendants not only acknowledge that this language relates to §706(1), but incorrectly attribute the quotes from the Attorney General's Manual to §706(1). Defendants then argue that "Krivonos cannot plausibly argue that the agency's decision was 'ministerial' or 'non-discretionary,'" and that "[b]ecause the agency's

decision was discretionary and non-ministerial, . . . [§]706(1) does not apply."  Defendants'
Memo at 4.

This argument may provide a persuasive basis for dismissing Plaintiff's demands for an
order compelling Defendants' (1) to reinstate Plaintiff to the practice before the BIA,
Immigration Courts and DHS and (2) to publish the decision requiring reinstatement, provided
that these demands constitute requests to compel agency action under §706(1).  However, this
argument does not suggest a basis for granting the relief Defendants seek: dismissal of all APA-
based claims for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  As
Defendants themselves acknowledge at the very start of the first point, Plaintiff is also seeking a
declaratory judgment under §706(2)(A).  Defendants' Memo at 4 ("Krivonos urges the Court to
declare 'Defendants' actions and orders, published and unpublished, refusing to reinstate
Plaintiff to practice before the BIA, Immigration Courts and DHS, to be arbitrary, capricious,
and/or an abuse of discretion within the meaning of 5 U.S.C. §706(2)(A).'").  Since Plaintiff's
claims under the APA are not based exclusively on §706(1), Defendants' *Norton*-based argument
does not provide a basis for dismissing all of Plaintiff's APA claims.

### Defendants' Footnote relating to 5 U.S.C. §701(a)(2)

In a footnote contained within their first point, Defendants allude to a possible basis for
dismissing all of Plaintiff's APA claims.  Defendants assert, "Congress's failure to provide
guidance to the agency provides a further ground for finding that the APA does not afford this
Court jurisdiction."  Defendants' Memo at 5, n.2.  However, the footnote provides no support for
this assertion, other than to cite to 5 U.S.C. §701(a)(2) – which provides that the APA does not
apply if the agency actions at issue are "committed to agency discretion by law" – and to

*Heckler v. Chaney*, 470 U.S. 821, 830 (1985) – which held that a law "can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely" if the statute "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."

Generally, there is a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986); *see also Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967) ("[J]udicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.").[8] While 5 U.S.C. §701(a)(2) creates a limited exception to reviewability when the agency action is committed exclusively to agency discretion by law, that exception is "very narrow." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). "The legislative history of the Administrative Procedure Act indicates that it is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Id.* (quoting S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)).

Defendants have offered nothing to suggest that the presumption of reviewability is inapplicable, or that the very narrow exception set forth in §701(a)(2) is applicable, to this action. Indeed, the entirety of Defendants' argument consists of a single, conclusory sentence contained in a footnote, accompanied by two citations which establish basic principles but do not relate to the facts of this case. This Court cannot grant dismissal of this action on what amounts

---

[8]This presumption does not apply to all agency actions. *See Chaney*, 470 U.S. at 831 (creating a presumption of non-reviewability for agency decisions not to undertake certain enforcement actions).

to little more than a headnote.  Accordingly, Defendants' motion to dismiss pursuant to §701(a)(2) is denied.  To the extent that Defendants can offer any analysis in support of this argument, they can request permission to renew this argument upon a motion for summary judgment.

***Defendants' Second Point***

The second numbered point in Defendants' Memo relates to that section of Plaintiff's complaint entitled, "Defendants' Irreparable Damage to Plaintiff."  Complaint at 23-26. Defendants apparently construe this section as attempting to allege irreparable harm, for they argue, *inter alia*, that "courts have routinely found that plaintiffs analogous to Krivonos's position have failed to establish irreparable harm."  Defendants' Memo at 6.  However, Defendants are uncertain about the claim to which the "irreparable harm" allegations relate, arguing that Plaintiff "is not entitled to relief for any claims stemming from allegations that Defendants' actions have caused him 'irreparable harm.'"  *Id*.

Defendants' assumption that Plaintiff meant to allege "irreparable harm" is not without basis.  The *ad damnum* clause of Plaintiff's complaint appears to request injunctive relief:  an order (1) directing "Defendants to reinstate Plaintiff to the practice of immigration law before the BIA, the Immigration Courts and the DHS," and (2) directing "Defendants to publish online and in print the decision that Plaintiff be reinstated."  Complaint at 28.  In order to obtain either preliminary or permanent injunctive relief, Plaintiff would need to establish "irreparable harm." To obtain a preliminary injunction, a party must show "that 1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation,

and that the balance of hardships tips decidedly in favor of the moving party." *Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999). Similarly, "[a] permanent injunction is appropriate where the party seeking the injunction has succeeded on the merits and 'show[s] the absence of an adequate remedy at law and irreparable harm if the relief is not granted.'" *Patsy's Italian Restaurant, Inc. v. Banas*, 658 F.3d 254, 272 (2d Cir. 2011) (quoting *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006)).

In his responsive papers, however, Plaintiff expressly denies that he is seeking a preliminary injunction. Rather, he implies that the section entitled "Defendants' Irreparable Damage to Plaintiff" pertains solely to his request for compensatory damages. In light of these representations, it is unnecessary to address Defendants' second point. However, this Court notes that if Plaintiff were seeking injunctive relief, his allegations would be inadequate to establish irreparable harm. "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005)). The section of Plaintiff's complaint entitled, "Defendants' Irreparable Damage to Plaintiff," asserts that the harm Plaintiff has suffered as a result of Defendants' actions can be quantified with some precision and is compensable by money damages.

### Defendants' Footnote Relating to Compensatory Damages

In a footnote contained in the first point of Defendants' Memo, Defendants seek to dismiss Plaintiff's demand for compensatory damages. What little argument is contained in that footnote implies that Plaintiff's complaint fails to state a claim for money damages because it

"asserts no waiver of sovereign immunity or jurisdictional basis." Defendants' Memo at 5, n. 3. The footnote also suggests that this claim cannot be grounded in the APA, citing authority for the proposition that 5 U.S.C. §702 waives sovereign immunity only with respect to lawsuits requesting relief other than money damages. *Id*. (citing *Adeleke v. United States*, 355 U.S. 144, 152 n. 7 (2d Cir. 2004)).

In his response, Plaintiff does not argue that his pleading is sufficient. Rather, he alleges that the FTCA affords a basis for collecting money from Defendants for defamatory statements contained in the BIA's September 26, 2007, decision. Plaintiff's Response at 4. Plaintiff's complaint, however, does not mention either the FTCA or defamation.

In their reply papers, Defendants argue two entirely new grounds for dismissal. First, they argue that exhaustion of administrative remedies is a jurisdictional prerequisite for filing an FTCA claim and that Plaintiff has not exhausted such remedies. Defendants' Reply at 2. Second, Defendants argue that the FTCA excepts defamation claims from its waiver of sovereign immunity. *Id*. (citing 28 U.S.C. §2680(h)).

Because Defendants' claim that Plaintiff has failed to state a claim for compensatory damages is raised only in a footnote in Defendants' Memo, this Court declines to grant the relief Defendants seek at this juncture. Nothing herein shall preclude Defendants from requesting permission to raise this argument in a motion for summary judgment. However, Plaintiff shall have until October 19, 2012, in which to request permission to move to amend his pleading to specifically allege a legal basis for awarding compensatory damages. Any such request shall be made in accordance with Section III.A of the Individual Motion Practices & Rules of Judge Sandra L. Townes (available at www.nyed.uscourts.gov/pub/rules/SLT-MLR.pdf).

This Court also will not address Defendants' arguments relating to the FTCA at this juncture. However, before seeking permission to amend his complaint to add claims under the FTCA, Plaintiff may wish to research the exhaustion requirements under the FTCA, *see*, *e.g.*, *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Adeleke*, *supra*, and whether the FTCA permits a plaintiff to sue for money damages arising from defamation. *See Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991).

## *CONCLUSION*

For the reasons set forth above, Defendants' motion to dismiss is denied without prejudice to requesting permission, at the close of discovery, to move for summary judgment pursuant to 5 U.S.C. §701(a)(2) and with respect to Plaintiff's compensatory damages claims. If Plaintiff wishes to amend his pleading to specifically allege a legal basis for awarding compensatory damages, he must request a pre-motion conference on or before October 19, 2012, in accordance with Section III.A of this Court's Individual Motion Practices & Rules. Defendants' time to answer the complaint is extended to October 26, 2012, and will be further extended if Plaintiff files a pre-motion conference request.

**SO ORDERED.**

_____/s/_____
SANDRA L. TOWNES
United States District Judge

Dated: September 28, 2012
      Brooklyn, New York